JONES v VAN DEBOE HAGER CO, et

Ohio Appeals, 2nd Dist, Franklin Co

No 2947. Decided April 7, 1939

Wood & Elder, Mt. Gilead; W. P. Vaughan, Mt. Gilead, for appellant, Anna H. Wood.

Francis M. Thompson, Columbus, for appellee, Mary S. Jones.

## OPINION

By HORNBECK, PJ.

The plaintiff instituted her action to quiet title to lot No. 370 of Wicklow Addition, the City of Columbus. She alleges that she is in actual possession of the real estate, that the Van DeBoe Hager Company was a grantee from its incorporators of the real estate described by a deed in which certain reservations and restrictions were set forth which conformed to conditions and restrictions theretofore set forth in a deed from William H. Harris and his wife to William Patterson on April 17, 1897.

All of the individual defendants are the only heirs of the said William H. Harris and Mary Harris. The conditions in the deed to the Van DeBoe Hager Company are as follows:

"Provided always and these presents are executed and delivered by the Grantor and accepted and received by the

Grantee upon the express condition which was also part of the consideration for the sale and conveyance of the aforesaid premises by the Grantor to the said Grantee that the said Grantee, his heirs, executors, administrators and assigns or any one holding or claiming by, through or under them, or any of them shall never himself, herself, or themselves or any of them hereafter manufacture, or sell for any purpose or purposes whatsoever, or permit or authorize any one else to manufacture or sell upon said premises or any part thereof any spirituous alcoholic or intoxicating liquor of any kind or description whatever or any wine, ale, beer or malt liquor of any kind or description whatever or erect and maintain a slaughter house or houses upon said premises or any part thereof, or carry on or permit to be carried on on said premises any business of a like offensive nature or obnoxious to a good residence neighborhood, and in case said Grantee, his heirs and assigns or anyone holding or claiming to hold said premises by, through or under them or any of them shall in any way violate any of the above conditions then these presents and this conveyance shall become null and void and all the rights, title and estate in said premises herein described and conveyed to said Grantee, his heirs and assigns, shall instantly and immediately revert and be revested in said Grantor, his heirs, successors and assigns forever, and he and they be seized as of his and their former estate therein, as if these presents had never been executed, and may immediately re-enter, possess and hold said premises as of a good estate in fee simple as aforesaid; and as a further part of the consideration of this conveyance and for the protection and benefit of the entire tract of land shown on the plat of said addition, and for the mutual advantage of the present and future owners thereof, it is agreed between the parties hereto that no dwelling house shall be erected on the above mentioned lot herein conveyed, costing less than $600.00, and that no dwelling house, barn or outbuilding shall be located on said premises herein conveyed nearer to the street line of said premises than 15 feet, by the grantee, his heirs and assigns, and the aforesaid conditions and stipulations and each and every one of them shall always be held and considered as running with the said real estate herein conveyed, and shall be made a part of and attached to all deeds and conveyances, instruments, leases, transfers and assignments made by said Grantee, his heirs and assigns, of any of them, of said premises."

The conditions in the deed from William H. Harris and wife to Patterson are as follows:

"Provided always and these presents are executed and delivered by the Grantors and accepted and received by the Grantee upon the express condition which was also a part of the consideration (being the "other good and valuable considerations" hereinbefore referred to) for the sale and conveyance of the above described premises by the said Grantors to the said William Patterson, Grantee, that the said Grantee, his heirs, executors, administrators and assigns or any one holding or claiming under them, or any of them shall never himself, herself or themselves or any of them hereafter, manufacture or sell for any purpose or purposes whatsoever, or permit or authorize any one else to manufacture or sell upon said premises or any part thereof, any spirituous alcoholic or intoxicating liquor of any kind or description whatever or any wine, ale, beer or malt liquor of any kind or description whatever or erect and maintain a slaughter house or houses upon said premises or any part thereof, or carry on or permit to be carried on on said premises any business of a like offensive nature or obnoxious to a good residence neighborhood, and in case said Grantee, his heirs or assigns or anyone holding or claiming to hold said premises by,

through or under them or any of them shall in any way violate any of the above conditions then these presents and this conveyance shall become null and void as to any lot or lots into which said premises may be divided, on which lot or lots said Grantee, his heirs and assigns or any one holding or claiming to hold by, through or under them or any of them, shall have violated any of said conditions, and all the rights, title and interest and estate in said lot or lots shall instantly and immediately revert unto and be revested in said William H. Harris, his heirs and assigns forever, and he and they be seized of his and their former estate therein, as if these presents had never been executed, and may immediately re-enter, possess and hold said premises as of a good estate in fee simple as aforesaid, and the aforesaid conditions and stipulations shall always be held and considered as running with said real estate hereby conveyed and shall be made a part of and attached to all deeds and conveyances, instruments leases, transfers or assignments made by said Grantee, his heirs or assigns, or any or either of them, of said premises."

Plaintiff further alleges that the lot described is not located to be improved by a residence or to be a part of a residential neighborhood; that the improvements on the lot, a store room and business place, abut on a thoroughfare that is and has been for years, a business street and is so zoned by the Council of the City of Columbus, that the conditions set forth in the deeds were designated for lots located for an exclusively residential district and inapplicable to the lot described in the petition and unlawfully restrict the use and alienation of real estate; that none of the defendants has had any interest in the described premises since the execution of the deeds except such as was reserved by said conditions; that the business of selling the spirituous, alcoholic or intoxicating liquor or wine, ale, beer or malt liquor is not an offensive or obnoxious business on said thoroughfare; that the sale of beer has continued without protest and with a permit from the City of Columbus since the repeal, in 1934, of the Prohibition Amendment to the Constitution of the United States. Further that by reason of the abandonment by defendants of their rights reserved by said conditions and their acquiescence in the uses made of said premises, and by reason of the lapse of time since said conditions were imposed, and by reason of the changes incident thereto, including the differences in public sentiment shown by the adoption of the Prohibition Amendment to the Constitution of the United States and the subsequent repeal thereof, and by reason of the inapplicability of said conditions to the lot described herein, said conditions of said deeds were or have become obsolete, inoperative and void.

It is further averred that because of the uncertainty as to the enforcibility of the conditions in the deeds prospective tenants and purchasers have rejected the title to said premises to the great and irreparable damage to the plaintiff. Plaintiff prays that the defendants and each of them may be compelled to show his interest and that the same may be adjudged to be null and void and plaintiff's title quieted against them and for such other and further relief to which she may be entitled.

All of the defendants defaulted except Anna H. Wood, who interposed a general demurrer to the petition. The court overruled the demurrer and defendant desiring to plead no further, judgment was rendered for the plaintiff. From this judgment the appeal on questions of law and fact is prosecuted.

The sole question for our consideration is whether or not the petition states a cause of action.

The appellant asserts two reasons for the sustaining of her demurrer.

1. That the plaintiff in her petition does not allege that she is the owner of the real estate described.

**Sec. 11901, GC,** provides that,

"An action may be brought by a person in possession of real property, by himself or tenant against any person who claims an estate of interest therein, adverse to him, for the purpose of determining such adverse estate or interest * * * ."

It will be noted that the section provides that the action may be brought by a person in possession ██ of real property against any one that holds adverse interest to him without further characterization. Bates Pleading Practice and Forms, page 2470 discusses the sufficiency of allegation as to title,

"The decisions are far from accordant on the necessity of describing plaintiff's interest. The chancery practice of 1831, Section 14; Swan, 703 .* * *, provided that 'any person having the legal title and possession of lands, may file a petition.' The omission, ever since the Code was enacted, of the requirement of legal title is significant of its being unnecessary, and such is universally held under the Code. In fact, whatever interest the plaintiff has may be quieted."

Citing several cases outside of Ohio and at page 2471,

"In jurisdictions where possesssion alone is sufficient, it is only necessary to aver plaintiff's possession, saying nothing about his title, the action not being to determine plaintiff's title, but defendant's claim. * * * In Ohio, it has been held sufficient to allege possession in the words of the statute. Lusby v Jones, 31 Bull 70; Bailey v Hughes, 35 Oh St 597."

Defendant's second reason for the sustaining of her demurrer:

2. That the restriction is lawful; that the petition discloses that the plaintiff was holding the real estate with knowledge of said restriction and that the court was without authority to abrogate such restriction.

Counsel for appellant cite **13 O. Jur., 974,**

"Restrictions against the sale of liquors on the pemises conveyed, the use thereof for saloon purposes, etc., frequently found in deeds to lots forming a part of a tract or allotment, have been universally sustained and enforced."

Defendant also cites the following cases:

**Isham v Matchett, 18 O. C. C. 338.**
**Johnson Co v Covats, 22 O. C. C. 206.**
**Bocham v Bartram, 18 O. C. C. N. S. 43.**
**Johnson Co v Kaszas, 8 O. N. P. 678.**
**Burlin v Stapely, 4 O. N. P. N. S. 65.**
**Dixon v Van Sweringen Co, 121 Oh St 56.**
**McGuire v Caskey, 62 Oh St 419.**
**Portage Park L. Co v Burch, 20 O. C. C. N. S. 378.**

The plaintiff relies in the main upon the averments in the petition of changed conditions in the section of the city where the lot described in the petition is located, laches of the defendant and the change in the attitude of the public toward the sale of intoxicating liquors.

The trial Judge in passing on the demurrer in the written decision which is before us, very properly ██ ly gave no weight to the last contention of the plaintiff but was of opinion that there were sufficient averments in the petition as to changed conditions and laches as to put the defendant to the necessity of answering.

The petition is not as informative as the briefs as to factual ██ questions and we are restricted to the allegations of the petition as to its sufficiency against the general demurrer.

An examination of the restrictions

lends support to the theory that all of them were carried into the deeds for the purpose of maintaining a strictly residential character to the lands which were the subject of the deeds. The condition that no spirituous or malt liquor should be sold, would in itself be a proper independent subject of restriction without respect to the purpose actuating the grantors who included it in their original deed. However, as the restriction is carried, it seems probable that it was a part of a general scheme to prevent the conducting of any business, the erecting of any buildings which would interfere with the continued use of the real estate for residence purposes only. In this situation the averments of the petition as to the changed conditions from ▮▮▮▮▮▮ ▮ residence to business became material and such allegations being accepted as true, could be the basis for the refusal of the trial judge to compel enforcement of the restriction.

There is another allegation in the petition which probably raises, though imperfectly, a question which should be resolved in favor of the trial court in sustaining the demurrer. It is said in the petition that none of the defendants, now or since the execution of their deeds, had any financial or other interest in the premises save that reserved by the conditions. This is broad enough to permit the conclusion that the appellant owned no land or lots which were a part of the land originally transferred by the Harris' to Patterson. There is no allegation that she owns lands adjacent thereto but in the situation appearing we may assume that she owns no such lands.

The question then presented is, may the appellant who owns none of the lands or lots, which were the subject of the restrictions, and no lands or lots adjacent thereto, avail herself of the restriction in a deed in which her ancester was the grantor? This proposition has been considered by courts and text writers and the decisions thereon are not entirely harmonious.

In Ohio, a well considered nisi prius case is that of **Burton, et v Stapely, 4 O. N. P. N. S. 65.** This case involved a restriction to the use of the property deeded for residence purposes only. The plaintiff was the immediate grantor to the defendant of the property upon which the defendant was erecting an apartment house in violation of the restriction, but owned no lots in the subdivision of which defendant's lot was a part, but did own valuable tracts in the vicinity of said lot. The court held that the plaintiff was entitled to have the defendant enjoined because of the enforcibility of the restriction and predicated the decision somewhat upon the plaintiff's ownership of lots in the vicinity of the lot of defendant upon which restriction was placed. The trial judge cites the case of Riley v Otto, 108 Mich. 330 wherein the plaintiff had sold a lot to the defendant with a restriction against the operation of a saloon on the premises. The defendant opened up a saloon and the plaintiff sought to enjoin him. Plaintiff had sold other lots in the vicinity without any restriction and at least one piece of property in the vicinity for saloon purposes. Plaintiff lived a mile and a half away, owned no ground immediately joining the lot in question, but did own some in the vicinity. The court held that the plaintiff was entitled to injunctive relief. Other cases are cited but in all instances the grantor, seeking to enforce the restriction, owned land in the vicinity of the restricted lot which would be affected by the violation.

**Huber v Guglielmi, 29 Oh Ap 290,** which opinion is written by Judge Mauck. The defendant owned lots in a tract and the court held that he was chargeable with the notice of restrictions thereon against moving buildings of any kind upon the lots. Defendant was violating the restriction. Plaintiff owned the adjoining lot to defendant and in this situation the court granted the relief sought. In **Hills v Graves, et, 26 Oh Ap 1,** it is said, syl 1,

"Where a restrictive covenant is inserted in a conveyance for the benefit

of contiguous or neighboring lands which the grantor retains, or in pursuance of a general scheme, such grantor, so long as he retains any of the lots or lands to be benefited by such covenant, may enforce the same without proving that a violation of the covenant would result in actual damage to him."

It will be noted that the decision is predicated in part upon the necessity that the plaintiff retain ownership of lots or lands to be benefited by such covenant.

We have found no case in Ohio where a restriction has been enforced in favor of a party who at the time of the act owned no part of the land or lots to which the restriction had application or owned no property near enough thereto to be affected by the violation of the restriction. In 14 Am. Jur. 665, it is said,

"If the restrictive covenant has ceased to have any beneficial value to the complainant's property, it can form no ground for equitable relief."

Citing several cases including Sanford v Keer, 80 N. J. Eq. 240 which is a subject of an annotation in 40 L. R. A. (N.S.) 1090.

A discussion of the subject "Who is Entitled to Enforce Restriction" is found in Tiffany Real Property, Second edition, page 1441,

"The person with whom the agreement was made, owning land in the neighborhood which might be benefited by reason of the restriction, may no doubt proceed in equity for its enforcement. If on the other hand he has no land to be benefited by the enforcement of the restriction, he cannot, by the weight of authority, obtain such relief, a view which accords with the general practice of courts of equity, to give relief only in favor of one who shows an interest in the subject matter of the suit."

Cases from several states are cited supporting the text. A contrary view is presented in Van Sant v Rose (Ill.) 103 N. E. 194, which decision has been criticized in 9 Ill. Law Rev. 58, 27 Harv. Law Rev. 493, 16 Mich. Law Rev. 97.

Our specific question is presented and decided in Graves v Deterling, 120 N. Y. 447, 24 N. E. 655 where it was held,

"that the heirs of a grantor who disposed of all his land cannot enforce the restriction."

Of course, we are expressing no opinion as to the enforcibility of the condition subsequent which was carried into the respective deeds if such condition was urged by any present owner of a lot which is a part of the Van DeBoe Hager Addition, it is possible that such a condition could be enforced by property holders adjacent to the Van DeBoe Hager Addition. Upon this phase of the case, our opinion is predicated entirely on the proposition that the appellant did not, as of the date ██ █ of the judgment entry in the trial court, have such a present interest in the real estate involved as to permit her to assert the benefit of the condition subsequent as a cloud on the title of the plaintiff.

We are of opinion that the averment of the petition as to the changed character of the sub-division from residence to business property and the allegation of laches, though possibly pled by way of conclusion rather than by operative facts, justified the trial judge in sustaining the demurrer and putting the defendant upon answer and likewise the third proposition which we have discussed, would, in our judgment, also support the sustaining of the demurrer. The judgment will be affirmed.

BARNES, J, concurs.

GEIGER, J., Dissents.

I can not agree with the conclusion arrived at by my associates for a number of reasons, which I may briefly state.

First, it is true that under the statute a person in possession may bring an action to quiet title, but in my judgment the petition in this case alleges facts involving the title not restricted to the use to which this plaintiff may be devoting the property without being the owner thereof. It may be possible that she is the owner, but she has not alleged that fact, neither has she set up the conditions of the deed giving her title.

Second, she avers that because of the uncertainty as to the enforcement of the condition in the deed, tenants and purchasers have rejected the title to the irreparable damage of the plaintiff. This allegation is the basis of her alleged right to the relief sought. If she is not the owner of the title, which she fails to allege, it is not of concern to her whether prospective purchasers have rejected the title and such rejection could not result in her great and irreparable damage. For all that we can detect from the petition, she is simply a tenant who wishes to run a place where intoxicating liquor is sold and this gives her no basis for quieting the title against the restrictions incorporated in many successive deeds to the property which she now occupies.

Third, it is possible that restrictions may be declared void under certain conditions, yet these conditions are not sufficiently plead. It may be that the case of Kokenge v Whetstone, No 27494, now pending in the Supreme Court on a motion to certify may throw additional light upon the question. The case is not now available, but the lower court held that a building restriction contained in all deeds to lots in a subdivision is to exist as long as it is reasonable and that in a suit to quiet title against such restrictions, plaintiff must prove by clear, convincing and substantial evidence, a change in the character of the neighborhood. While this case seems to relate to proof, yet it gives some indication of the necessity of proper, definite allegations, such as are lacking in the petition at bar.

We do not believe that the allegations of this petition are sufficient to meet this requirement.

Fourth, while it may be possible that the answering defendant would have no right to bring an action to enforce the restrictions, unless she was the owner of some adjacent real estate, she is not a plaintiff in this action but a defendant, and is brought into court by the plaintiff and she certainly has a right to require that the plaintiff state a ground of action against her before she may be required to answer.

Fifth, there are conditions in the deed which would make her a proper party plaintiff and certainly involve interests far more important than the enforcement of a restriction when she was not the owner of any adjacent property. The liquor restrictions are exceedingly strict and detailed. It is provided, in substance, that in case the grantee or anyone holding through or under the grantee, shall in any way violate the conditions:

"Then these presents and this conveyance shall become null and void and all the rights, title and interest in said premises herein described and conveyed to said grantee, his heirs and assigns, shall instantly and immediately revert and be revested in said grantor, his heirs, successors and assigns forever and he and they be seized as of his and their former estate therein as if these presents had never been executed, and may immediately re-enter possess and hold said premises as of a good estate in fee simple as aforesaid."

It seems to me that gives the former grantor, the conditions of whose deed is being violated, a valuable right to re-enter and re-possess himself of the property upon the violation of the conditions and that right is much more valuable and tangible than may be the right of one in the former chain of title to have the conditions observed when he himself may not be interested in the enforcement of the condition by reason of having no adjacent property.

There is a further condition in the deed in reference to property lines,

which if the conditions as to the sale of liquor are to be avoided, are equally subject to attack. It is provided that for the mutual advantage of the present and future owners it is agreed that no dwelling house shall be erected costing less than $600 and that no building shall be located on the premises nearer to the street line than 16 feet. It is further provided that all the conditions and stipulations shall always be held as running with the real estate and shall be made a part of and attached to all deeds and conveyances.

The original grantors and those subsequently conveying the property have clearly evinced a determination that certain conditions shall attach to this property which are for the mutual and perpetual benefit of those buying lots and these conditions should not be held void simply because one in the line of title may not have any land in the vicinity or be interested in any other lot than the one to which the title is sought to be quieted. The petition in this case, I think, is fatally defective for the further reason that it is clear from its reading and from the conditions attached that there are other property owners holding property in the same addition with like restrictions. It may be answered to this that only certain defendants are brought before the court and that the action of the court in quieting the title would be determinative only of the rights of the defendants who are made parties. However, their rights are interwoven with the rights of others. I believe that a demurrer on the ground of defect of parties defendant would have been available to the defendant in this case.

If the plaintiff prevails in this case or even has set up a good cause of action, requiring an answer. then all subdivisions having restrictions valuable to the residents would be subject to like attack and those provisions which have been attached to land sold for residential purposes, which run with the land, could be declared void when those in whose deed such conditions were incorporated are not defendants. Of course such an action would only

determine the rights of those who are defendants, but the adverse determination of the rights of a named defendant would affect the rights of those not parties, in that beneficial restrictions would be removed from lots adjacent belonging to parties not named defendants. Many people bought the lots because these restrictions were to follow the deed of every purchaser. Many people would prefer to live in a neighborhood where intoxicating liquor is not sold and to permit this plaintiff in possession, but who has failed to even state that she is an owner, to void the condition on the allegations in the petition is not consistent with the rights that they have acquired and paid for. In my judgment, the petition does not state a cause of action.

The petition is inartificially drawn and should, I think, have been first attacked by motions rather than a demurrer. There are certainly many paragraphs of the petition that are immaterial and irrelevant.